JOHN LEIGH

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield March 30, 1885.*

1. EVIDENCE—*dying declarations—admissibility of evidence in respect thereto.* On the trial of one upon a charge of murder, the court had the jury to retire, and heard the testimony of two witnesses who were present together at the time the person injured made a statement of the facts in relation to his injury, both of whom testified as to the state of mind of the declarant at the time, and his apprehension of death, but one only as to his declarations, from which the court held the same were admissible as dying declarations. The jury were recalled, when the same testimony was repeated, and in addition the witness who had testified on the preliminary hearing only as to the mental condition of the declarant, and his apprehension of death, gave his declaration. On objection that the court should have heard, on the preliminary examination, the statement by this latter witness, of the declarations, before it was permitted to go to the jury, in order that the defendant might not be prejudiced by something improper that the witness might say, it was *held*, the testimony was in itself all admissible and proper, and there was no injury to the defendant in this regard.

2. SAME—*affidavit of person injured, to impeach his statements subsequently made, as dying declarations.* There is no material error in refusing to admit in evidence an affidavit made by a party assaulted and injured, against his assailant, showing the facts of the assault, for the purpose of impeaching his dying declarations, made afterward, when there is nothing in such affidavit contradictory of any statement in his dying declarations.

3. SAME—*of an instruction, as not stating all the elements necessary to dying declarations.* An instruction in behalf of the People in a capital case naming certain matters which the jury may consider in determining the weight to be given to dying declarations, is not erroneous merely because it fails to inform the jury that the declarations must have been made under the sense of impending death, when it does not exclude the idea of this being a necessary element, and the deficiency is supplied in one of the defendant's instructions.

4. SAME—*contradictions in testimony—as affecting the question of its being considered at all.* Where two witnesses testify to dying declarations made in their presence, being together at the time, and their testimony agrees in the essential of the commission of an unprovoked homicide, the fact that they vary somewhat as to the attendant circumstances, one being more full than that of the other, will not warrant an instruction for the rejection of the testimony of both on the ground of its being contradictory or untrue.

5. CRIMINAL LAW—*reasonable doubt—as applied to a particular fact.* A defendant in a criminal case is not entitled, as a matter of right, to an instruction that if the jury have any reasonable doubt as to a particular thing in the evidence supposed to relate to the offence charged, not an essential fact in the constitution of the crime, to give the defendant the benefit of such doubt.

6. So on the trial of one for murder, in which the dying declarations of the person injured were shown, the defendant asked the court to instruct the jury as follows: "In order that such declarations should have any weight, you must further believe, from the evidence, that they were detailed to you substantially as they were made by him (deceased.) *If you have any reasonable doubt as to whether the declarations were made at the time when R. felt that death was impending and certain to follow almost immediately, and after he had despaired of life, or whether his declarations have been detailed to you by witnesses substantially as they were made, you should give the defendants the benefit of such doubt.*" The court modified the instruction by striking out all the words in italics. The jury, by other instructions, had been fully and most favorably instructed for the defendant upon the subject of dying declarations, and as to the necessity of proof of the defendant's guilt beyond a reasonable doubt: *Held,* that there was no error in the modification.

7. SAME—*apparent danger—self-defence.* On the trial of one for murder, the court instructed the jury, for the People, to the effect that if the defendant, when not in actual or apparent danger of receiving death or great bodily harm at the hands of the person with whom he was involved in difficulty, shot and killed him, they should find the defendant guilty as charged: *Held,* that the defendant had no just cause of complaint from the use of the words, "apparent danger," instead of words showing circumstances such as to excite the fears of a reasonably prudent man. The appearance of danger does not imply more, but rather less, than such urgency of danger as to excite the fears of a reasonable person.

8. On the same trial, the court, on behalf of the defendant, instructed the jury that if they had any reasonable doubt, from the evidence, whether the defendant, at the time of the shooting, was under a reasonable apprehension that his antagonist was about to inflict upon him great bodily harm, or would kill him, and that he fired the shot under that belief, it was their duty to acquit: *Held,* that the instruction embraced about all the law of the case upon the point of self-defence the defendant was entitled to have given to the jury, and that there was no error in refusing other instructions varying from the one given.

9. SAME—*threats—in justification of homicide.* On a trial for murder, proof of previous threats by the person killed will not justify an unlawful attack or killing. Such proof is admissible only for the purpose of giving character to any attack the deceased may have subsequently made upon the defendant. The circumstances of such an attack are to be considered and

judged of in view of the previous threats of the deceased. But where the attack is of such a murderous character as to clearly justify the homicide, as in self-defence, his previous threats will have no weight at all, and an error in an instruction relating to such threats will not work an injury to the defendant.

10. So on the trial of a capital case, the court, for the People, instructed the jury that the previous threats of the deceased were only admissible for the purpose of giving character to the attack the deceased might subsequently make upon the defendant, and concluded: "And before such threats should be considered by the jury as any evidence whatever to extenuate or justify the killing, it must appear, from the evidence, that the deceased actually attacked the defendant in such a manner as to create in a reasonable person a reasonable and well grounded fear of receiving death, or great bodily harm, at the hands of the deceased:" *Held,* that the last clause was erroneous, as an attack of less violence would have sufficed; but when the only evidence of such attack was that of the defendant, which showed it to have been of such a character as to justify the homicide, independent of the previous threats, it was held that the error in the instruction was harmless.

11. NEW TRIAL—*newly discovered evidence.* Newly discovered evidence not of a conclusive character, but cumulative, merely, affords no ground for a new trial.

WRIT OF ERROR to the Circuit Court of Fayette county; the Hon. JESSE J. PHILLIPS, Judge, presiding.

Messrs. PALMERS, ROBINSON & SHUTT, for the plaintiff in error:

As to the law applicable to the admissibility of dying declarations, and the proper practice, see *Starkey* v. *People,* 17 Ill. 20; *Barnett* v. *People,* 54 id. 331; *Nelson* v. *State,* 13 S. & M. 500.

The court erred in refusing to admit in evidence the affidavit made by the deceased, giving an account of the same transaction. Instruction No. 15, of the People, in laying down the rule for weighing dying declarations, failed to give the very essential element that they were made under the sense of impending death.

The court erred in modifying defendant's twelfth instruction, and in striking out the clause for the rejection of the testimony relating to the dying declarations, if contradictory or untrue. It must appear, beyond a reasonable doubt, that

the alleged declarations were made in extremity. *Starkey* v. *People*, 17 Ill. 21; *Tracey* v. *People*, 97 id. 106; *Rex* v. *Ashton*, 2 Lewin, 147; 2 Leading Crim. Cases, 243.

The threats of the deceased communicated to the accused before the killing, are proper to show the grounds for his apprehension of great bodily injury. The People's fourteenth instruction virtually excludes all consideration of threats from the jury. *People* v. *Scoggins*, 37 Cal. 677.

The court erred in refusing instructions relating to the law of self-defence, and in refusing a new trial.

Mr. GEORGE HUNT, Attorney General, for the People:

The variance of the witnesses as to the time they went to Rigby's, ought not to impeach their testimony upon the important and vital facts. It is enough to give the substance of dying declarations. *Starkey* v. *People*, 17 Ill. 22.

The affidavit of the deceased was made the day before the dying declarations, and it could not modify or contradict the statements made by the witnesses as to the dying declarations.

The seventh of the People's instructions, relating to self-defence, is not erroneous, under the defence set up by the defendant. Crim. Code, secs. 148, 149; 3 Greenleaf on Evidence, sec. 115; *Dawson* v. *People*, 90 Ill. 231.

The eleventh instruction for the People, taken as a whole, correctly states the law. *Kinney* v. *People*, 108 Ill. 519.

It is not error to refuse an instruction repeating a principle already given. *Murphy* v. *People*, 37 Ill. 447.

The newly discovered evidence is not conclusive, and is hardly cumulative.

Mr. JOHN G. DRENNAN, State's Attorney, also for the People:

The defendant was not injured by the admission of any improper evidence of Taylor as to the dying declarations. It is proper to prove the same or different dying declarations, by different witnesses. *Barnett* v. *People*, 54 Ill. 325.

The version of the affair set forth in the affidavit does not contradict the dying declarations, nor show the killing was in self-defence. Wharton on Crim. Evidence, secs. 293, 295, 297, 298.

The People's fifteenth instruction states the law as laid down in *Barnett* v. *People*, 54 Ill. 331, and especially so when considered in the light of the defendant's seventh, thirteenth, fourteenth, and modified twelfth and fifteenth, instructions.

Instruction No. 10 is copied from one in *Gainey* v. *People*, 97 Ill. 278, and so is the twelfth. No. 11 is fully sustained in *Davison* v. *People*, 90 Ill. 229. No. 14 is sustained by *Forbes* v. *Snyder*, 90 Ill. 377, on the principle that before threats can be considered there must be proof of an attack by the deceased.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

John Leigh was indicted in the Christian county circuit court, with his father, Emanuel T. Leigh, for the murder of James Rigby. The venue was changed to Fayette county, and the defendants were tried at the February term, 1884. The jury acquitted Emanuel T. Leigh, and found John Leigh guilty of manslaughter, and fixed the term of his imprisonment in the penitentiary at five years. A motion for a new trial was made and overruled, and judgment entered upon the verdict. The defendant John Leigh prosecutes this writ of error.

The alleged dying declarations of James Rigby, testified to by the witnesses Anderson and Taylor, were received in evidence. Preliminary thereto the jury were sent out, and an examination of the witnesses was had before the court as to the admissibility of the declarations, Anderson testifying to the state of mind of Rigby, his apprehension of death, and his declarations. Taylor's examination was confined to the question of the state of mind of Rigby, and his apprehension

of death.    The two witnesses were present together at the time of the making of the declarations.    The court decided the evidence of the declarations to be admissible to go to the jury.    The jury were then recalled, and Anderson repeated before the jury his testimony upon the preliminary examination.    Taylor followed, repeating his testimony given on the preliminary examination, which referred alone to the state of Rigby's mind, and his apprehension of death; and he was then permitted by the court, against the objection of the defendants, to go beyond the points embraced in his preliminary examination, and testify to the declarations made by Rigby at the time to which he referred.    This is complained of as error.    All the reason suggested why the court should have heard, on the preliminary examination, Taylor's statement of the declarations before it was permitted to go the jury, is, that the defendant might not be prejudiced by something improper that the witness might say.    But the testimony received was in itself all admissible and proper, and there was no injury to the defendant in this regard.    The objection is without force.

It is insisted that the court erred in its exclusion from the jury of an affidavit made by the deceased on the day of the homicide, offered by the defendant to impeach or contradict the dying declarations.    There is, as is said, a difference between the declarations and the affidavit.    The one is more full than the other, and there may be statements in one not contained in the other; but we do not find there to be contradiction between them, and we do not regard the affidavit as containing anything which could fairly be said to be in impeachment of the declarations.    We can not say there was any material error in excluding the affidavit.

Complaint is made of the court's action with respect to instructions.    The fifteenth instruction given on behalf of the People named certain things which the jury might take into consideration in determining the weight to be given to

the dying declarations of Rigby. The objection is taken to this instruction, that it failed to inform the jury that the declarations must have been made under the sense of impending death. The instruction did not at all exclude the idea of this being a necessary element. And the fourteenth instruction given for the defendants fully supplied the alleged deficiency in the former.

The twelfth instruction, as prayed by the defendants, after enumerating a variety of circumstances which the jury should take into consideration in determining the degree of credit to be given to such declarations, concluded as follows: "*And if you believe, from all the facts before you in evidence with respect to their declarations as stated by the witnesses, that they are contradictory and untrue, you ought to reject them altogether,* and it is your duty to give them such weight only as you may believe, after a fair consideration of all the circumstances, that they are entitled to." The court modified the instruction, as prayed, by striking out the words in *italics,* and, as thus modified, gave it to the jury. Exception is taken to this modification. We see in it no substantial ground of complaint. The last clause in the instruction embraced essentially all that was proper in what was stricken out. The statements of the declarations given by the witnesses agreed in the essential of the commission of an unprovoked homicide, but varied somewhat as to attending circumstances, and one being more full than that of the other. The giving of the portion of the instruction stricken out might have misled the jury to think that contradiction or variance in unessential circumstances would warrant rejection of the entire testimony of the witnesses.

The twelfth instruction asked by the defendants was:

"In order that such declarations should have any weight, you must further believe, from the evidence, that they were detailed to you substantially as they were made by him.

*If you have any reasonable doubt as to whether the declarations were made at the time when Rigby felt that death was impending and certain to follow almost immediately, and after he had despaired of life,* or whether his declarations have been detailed to you by witnesses substantially as they were made, you should give the defendants the benefit of such doubt."

The court modified this instruction by striking out the words in *italics*, and thus modified gave it to the jury. Exception is taken to this. The jury, by other instructions, had been fully, and most favorably for the defendants, instructed upon the subject of dying declarations, and as to necessity of proof of the defendants' guilt beyond a reasonable doubt, in order to a conviction. The reasonable doubt spoken of in the refused portion of this instruction did not relate to the defendants' guilt, or to any essential fact in the constitution of the crime charged, but to a mere particular of evidence tending to prove the commission of the crime, as to which we perceive no just ground of complaint in the court refusing to apply the rule of reasonable doubt. It is a kind of instruction a party is not entitled to have given. *Mullins* v. *The People*, 110 Ill. 42.

Objection is taken to the seventh instruction for the People, which is to the effect that if the defendant John Leigh, when not in actual or apparent danger of receiving death or great bodily harm at the hands of James Rigby, shot and killed Rigby, then they should find him guilty as charged in the indictment. What is complained of is the use of the words "apparent danger," without reference to the question whether the circumstances were such as to excite the fears of a reasonable person. If the circumstances be such as to excite the fears of a reasonable person, of danger, we think there would be appearance of danger. That apparent danger does not imply more, but rather less, than such urgency of danger as to excite the fears of a reasonable person, so that defend-

ant has no cause of complaint in the use of the former phrase instead of the latter.    See *Davison* v. *The People*, 90 Ill. 231. The law, too, in respect of reasonable fear, was fully given to the jury in other instructions.

. The tenth instruction for the People, which is objected to, appears to be but a copy of one which was sustained in *Gainey* v. *The People*, 97 Ill. 278, with which we are satisfied.

The objection to the eleventh instruction we deem sufficiently answered in what has been said in regard to the seventh.

We do not consider the thirteenth liable to the objection urged against it, of unduly giving prominence to certain facts.

The fourteenth instruction for the People was in respect of threats,—that they would not justify an unlawful attack or killing, and were only admissible for the purpose of giving character to the attack which the deceased might subsequently make upon the defendant, and concluded as follows : "And before such threats should be considered by the jury as any evidence whatever to extenuate or justify the killing, it must appear, from the evidence, that the deceased actually attacked the defendant in such a manner as to create in a reasonable person a reasonable and well grounded fear of receiving death, or great bodily harm, at the hands of the deceased." This last clause was erroneous. An attack of less violence than expressed in the instruction would have sufficed. Such an attack was not first to be proved before threats could be considered. The circumstances were to be considered and judged of in view of the threats, whether the former, taken together with the latter, showed an attack of the character named in the instruction. As had rightly been before said in the instruction, the threats were admissible for the purpose of giving character to the attack, and this should not have been departed from, as it was, in the conclusion. But the only evidence of any attack whatever was that of the defendant, and his evidence showed it to be a plainly

murderous attack, which clearly justified the homicide as in self-defence, so that if the jury should believe there was any assault by the deceased, they must, believe it from the defendant's evidence, which showed an assault of the character above named.   In such a case the evidence of threats would have had no weight at all, and we can see that this instruction could have done the defendant no injury.

The nineteenth instruction is conceded to be warranted by the ruling in the case of *Hirschman* v. *The People*, 101 Ill. 576 ; but that, it is insisted, is incorrect.   On a reëxamination of the same, in view of the objections urged against it, we still adhere to what was there said.

The defendants asked the court to give to the jury a series of instructions, twenty-six in number.   Seventeen of them were given as asked, four as modified, and five were refused. Four of those refused related to the matter of self-defence. Upon that specific subject five instructions were given for the defendants, the last one being as follows :

"24.   If you have any reasonable doubt, from the evidence, whether the defendant John Leigh, at the time of the shooting, was under a reasonable apprehension that the deceased, Rigby, was about to inflict upon him great bodily harm, or would kill him, and that he fired the shot under that belief, then it is your duty to acquit the defendants."

This instruction really embraced about all of the law of the case, under the evidence, upon the point of self-defence, which the defendants were entitled to have given to the jury. Four of the refused instructions were upon this same subject of self-defence, varying from those given in the recitation of supposed facts in the case more or less faulty.   What of law they contained we consider as embraced substantially in instructions which were given, except two relating to threats, which, in that respect, were so intermingled with other matters as to make them objectionable.   And as we have said

instructions as to threats could not have been injurious under the evidence, so neither could have been the refusal of such.

We find no substantial error in the giving, modifying or refusing of instructions.

No question was made, as there could not well be, of the sufficiency of the evidence to sustain the conviction.

It is insisted the court erred in overruling the motion for a new trial, on the ground of newly discovered evidence. That evidence was to the purport that James Rigby, about two weeks before the homicide, applied to one Sullivan for the loan or purchase of a pistol, saying he was always having trouble with the Leighs, and did not intend they should get the start of him; that Sullivan refused to let him have the pistol; that Rigby afterwards said he was determined to have a pistol or revolver,—that sooner or later he and the Leighs were bound to have bad trouble. This evidence was not at all of a conclusive nature, and was but of a cumulative character. We perceive no error in the overruling of the motion upon this ground.

The judgment will be affirmed.

*Judgment affirmed.*